\*\*E-Filed 8/30/2007\*\*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| COUNTY OF SANTA CRUZ, et al.,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>ALBERTO GONZALES, Attorney General of the United States, et al.,<br><br>　　　　　　　Defendants. | Case Number C 03-01802 JF<br><br>ORDER[1] GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND IN PART<br><br>[re: docket nos. 132, 164, 165] |

## I. BACKGROUND

Plaintiffs allege the following facts. WAMM is a collective hospice organization located in the City and County of Santa Cruz, California. First Amended Complaint ("FAC") ¶ 4. It has a maximum membership of 200 patients who suffer from HIV or AIDS, multiple sclerosis, glaucoma, epilepsy, various forms of cancer, and other serious illnesses, the majority of whom are terminally ill. *Id*. ¶ 60. The "primary care giver" of each patient, as defined by California Health & Safety Code § 11362.5(e), also is a member of WAMM. *Id*. ¶ 19. WAMM members use medical marijuana in compliance with California law and with the written recommendation

---

[1] This disposition is not designated for publication and may not be cited.

of their doctors. *Id*. Plaintiff Valerie Corral ("Corral") is the founder and executive director of WAMM. *See id*. ¶¶ 30, 31. The WAMM headquarters was located at Corral's home at the time of the raid discussed below, but since has relocated to downtown Santa Cruz. *Id*. ¶ 55.

Named Plaintiffs Corral, Eladio V. Acosta ("Acosta"), Jennifer Lee Hentz ("Hentz"), Harold F. Margolin ("Margolin"), and Levi Castro ("Castro")[2] use medical marijuana and are members of WAMM. *See id*. ¶¶ 20, 21-22, 26-27, 30-33, and 36. Some of the named Plaintiffs as well as other WAMM members have tried "all other legal and available remedies," and medical marijuana is the *only* medication that "addresses otherwise fatal symptoms or aspects of their condition" or permits them "to continue with the treatments that prevent or forestall their death." *Id*. ¶¶ 61, 62. Plaintiffs allege that "[w]ithout medical marijuana, these individuals will die." *Id*. Other of the named Plaintiffs and additional WAMM members use medical marijuana to "alleviate[] otherwise unbearable or debilitating symptoms of their condition" or "to continue with medical treatments that make their lives bearable." *Id*. ¶¶ 63, 64. For some of these members, medical marijuana is the "only effective treatment," and without it they "would have no ability to direct their lives, control the quality of life, or make intimate personal decisions central to their autonomy." *Id*.

Additionally, some of the named Plaintiffs and other WAMM members plan to use medical marijuana while they are in the process of dying, which will "provide them with relief from their pain while allowing them the lucidity to be with their loved ones and attend to the final matters of their life." *Id*. ¶ 65. They allege that "[o]nly marijuana allows them to direct the course of their medical treatment, improve their quality of life during their final days, and control the circumstances of their death." *Id*. Thirty-two WAMM members have died between the filing of the original complaint on April 23, 2003 and the filing of the FAC on January 30, 2006. *See id*. ¶ 20. Named Plaintiffs Dorothy Gibbs ("Gibbs"), Michael Cheslosky ("Cheslosky"), and James Daniel Baehr ("Baehr") passed away on March 12, 2004, March 7, 2005, and December 12, 2005, respectively. *Id*. ¶¶ 45, 38, 41.

---

[2] Castro was not named as a plaintiff in the original complaint.

2

Case No. C 03-1802 JF
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND IN PART
(JFLC1)

Plaintiffs allege that WAMM is "in complete compliance with California law." *Id.* ¶ 4. California's medicinal marijuana statute, the Compassionate Use Act of 1996, was enacted by California voters on November 5, 1996, when they passed Proposition 215. *Id.* ¶ 53; Cal. Health & Safety Code § 11362.5. The statute creates an exemption from state laws that prohibit the cultivation and use of marijuana by permitting patients and their primary caregivers to possess and cultivate marijuana for personal medicinal use upon a physician's recommendation or approval. *Id.* § 11362.5(d). Following enactment of the Compassionate Use Act of 1996, Plaintiff City of Santa Cruz ("the City") enacted additional legislation to facilitate implementation of the statute. *See* Santa Cruz Municipal Code § 6.90.010, *et seq.*; FAC ¶ 68. Among other things, the City's medicinal marijuana ordinance authorizes the City to deputize individuals and organizations as medicinal marijuana providers to assist the City in implementing the statute. *Id.* ¶ 73. Pursuant to Santa Cruz Municipal Code § 6.90.010(4), WAMM is recognized by the City of Santa Cruz as a medical marijuana provider association. *Id.* ¶ 70. Pursuant to Santa Cruz Municipal Code § 6.90.080, the Santa Cruz City Council deputized Corral and her husband and primary caregiver, Michael Corral, to serve as deputies in order to assist the City in administering its and California's medical marijuana laws. *See id.* ¶ 73. In 2005, the City has enacted an ordinance that establishes an Office of Compassionate Use that, when presented with a valid identification card, "shall provide the patient, or the primary caregiver, with the amount of marijuana recommended by the physician for use over a one-month period." Santa Cruz Municipal Code § 6.92.040.

Virtually all marijuana use is prohibited by federal law. The Controlled Substances Act, 21 U.S.C. §§ 801, *et seq.* ("CSA"), provides that "[e]xcept as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a)(1). The CSA divides drugs and certain other substances into five categories, or schedules, that impose varying restrictions on access to a drug according to the schedule in which the drug has been placed. *See* 21 U.S.C. § 812(a). A drug is assigned to Schedule I, the most restrictive schedule, if (1) it "has a high potential for abuse," (2) it "has no currently

accepted medical use in treatment in the United States," and (3) "[t]here is a lack of accepted safety for use of the drug . . . under medical supervision." 21 U.S.C. § 812(b)(1). Marijuana is assigned by statute to Schedule I. *See* 21 U.S.C. § 812(c).[3] "Schedule I drugs may be obtained and used lawfully only by doctors who submit a detailed research protocol for approval by the Food and Drug Administration and who agree to abide by strict recordkeeping and storage rules." *Alliance for Cannabis Therapeutics v. Drug Enforcement Admin.*, 15 F.3d 1131, 1133 (D.C. Cir. 1994).

On September 5, 2002, between twenty and thirty armed agents, including officers of the federal Drug Enforcement Administration ("DEA"), raided the WAMM headquarters, then located at the Corrals' home. FAC ¶ 55. The DEA agents forcibly entered the premises, pointed loaded firearms at the Corrals, forced them to the ground, and handcuffed them. *Id*. The Corrals subsequently were transported to the federal courthouse in San Jose, where they were released without being charged. *Id*. DEA agents remained on the premises for eight hours, seizing 167 marijuana plants, many of the WAMM members' weekly allotments of medicinal marijuana, various documents and records, and other items. *See id*. ¶ 56.

Plaintiffs allege that the DEA raid was "motivated by a federal policy of harassing WAMM, disrupting its activities, and attempting to stop its seriously ill patient members from cultivating medical marijuana . . . and was further intended to force California to recriminalize medical marijuana." *Id*. ¶ 59. They allege that numerous federal policies and practices "exceed[] legitimate forms of persuasion and effectively commandeer[] the law-making function of California and its political subdivisions." *Id*. ¶ 78. For example, the federal government "enacted a policy of threatening to revoke or revoking the federal prescription license and eligibility to receive Medicare and Medicaid reimbursements of any physician who recommended to a patient the medical use of marijuana." *Id*. ¶ 80. Also, the United States

---

[3] The criteria for Schedule II are: (1) the drug "has a high potential for abuse," (2) it "has a currently accepted medical use in treatment in the United States or a currently accepted medical use with severe restrictions," and (3) "[a]buse of the drug . . . may lead to severe psychological or physical dependence." 21 U.S.C. § 812(b)(2). Drugs assigned to Schedule II include codeine, coca leaves, morphine, methadone, and methamphetamine. *See* 21 C.F.R. § 1308.12.

Attorney for Hawaii made public statements "threatening to prosecute physicians who made medical findings that would allow patients to qualify under Hawaii's medical marijuana law." *Id*. ¶ 81. Plaintiffs further allege that federal officials have selectively targeted cultivators of marijuana intended for medical use while not targeting cultivators of marijuana not intended for medical use. *See id*. ¶ 82. They allege that in February 2002, Asa Hutchinson, the then-Administrator of the DEA, "publicly confirmed that medical marijuana raids . . . were a part of the federal government's commitment to disrupt implementation of the Compassionate Use Act." *Id*. ¶ 85.

      On April 23, 2003, Plaintiffs City and County of Santa Cruz, Corral, Acosta, Baehr, Cheslosky, Hentz, Gibbs, Margolin, and WAMM, filed the original complaint in the instant action against Defendants John Ashcroft, Attorney General of the United States; John B. Brown III, Acting Administrator of the DEA; John P. Walters, Director of the Office of National Drug Control Policy; and 30 Unknown DEA Agents, seeking to enjoin alleged violations of their constitutional rights, declaratory relief, and damages. On August 28, 2003, this Court issued an order denying Plaintiffs' motion for a preliminary injunction and granting Defendants' motion to dismiss with leave to amend. On April 21, 2004, in light of the Ninth Circuit's decision in *Raich v. Ashcroft*, 352 F.3d 1222 (9th Cir. 2003) ("*Raich I*"), *vacated and remanded*, 545 U.S. 1 (2005), the Court granted Plaintiffs' motion for reconsideration with respect to their claim for unlawful exercise of Congressional powers under the Commerce Clause, granted Plaintiffs' motion for a preliminary injunction, and denied Defendants' motion to dismiss with respect to this claim. On May 10, 2004, the Court stayed this action pending the Supreme Court's review of *Raich I*. On June 21, 2004, pursuant to its April 21, 2004 order, the Court issued an order for preliminary injunctive relief with respect to Plaintiffs' Commerce Clause claim. On September 20, 2005, following the Supreme Court's decision to vacate and remand in *Raich I*, the Ninth Circuit reversed this Court's order granting a preliminary injunction.

      On January 30, 2006, Plaintiffs City and County of Santa Cruz, Corral, Acosta, Baehr, Cheslosky, Hentz, Gibbs, and Margolin, Castro, and WAMM, filed the operative FAC against Defendants Alberto Gonzales, Attorney General of the United States; Karen P. Tandy,

Administrator of the DEA; John P. Walters, Director of the Office of National Drug Control Policy; and 30 Unknown DEA Agents, seeking injunctive relief, declaratory relief, and damages. Plaintiffs assert six claims for relief: (1) injunctive and declaratory relief for violation of fundamental rights[4] under the Fifth and Ninth Amendments, (2) injunctive and declaratory relief for deprivation of the "fundamental right to control the circumstances of one's own death" under the Fifth and Ninth Amendments, (3) injunctive and declaratory relief for violation of the Tenth Amendment, (4) injunctive and declaratory relief pursuant to the immunity of local officials under 21 U.S.C. § 885(d), (5) damages for violations of the Fourth, Fifth, Ninth and Tenth Amendments, and (6) injunctive and declaratory relief pursuant to the doctrine of medical necessity.

On February 27, 2006, Defendants moved to dismiss the first, second, third, fourth, and sixth claims of the FAC for failure to state a claim upon which relief can be granted. On May 5, 2006, Defendants moved to dismiss the fifth claim of the FAC for failure to state a claim upon which relief can be granted. Plaintiffs opposed the motions. The Court heard oral argument on June 23, 2006. On July 18, 2006, the Court denied in part and granted in part with leave to amend Defendants' motion to dismiss the fifth claim. The Court withheld decision on the motion to dismiss the remaining claims pending the decision of the Ninth Circuit in *Raich v. Gonzales*, No. 03-15481 (*Raich II*), which was argued on March 27, 2006, and decided on March 14, 2007. *See* __ F.3d __, 2007 WL 754759 (9th Cir. Mar. 14, 2007). On April 2, 2007, the Court requested supplemental briefing by both sides about the effect of *Raich II*. This briefing was filed on April 18, 2007. The Court heard supplemental oral argument on July 13, 2007.

## II. LEGAL STANDARD

A complaint may be dismissed for failure to state a claim upon which relief can be granted for one of two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under

---

[4] The fundamental rights asserted by Plaintiffs in their first claim for relief are: (1) the "right to preserve life," (2) the "right to ameliorate pain," (3) the "right to maintain bodily integrity," (4) the "right to consult with [Plaintiffs'] physicians regarding treatment and to act on the physicians' recommendations," and (5) the "right to make certain intimate and personal decisions." FAC ¶ 99.

a cognizable legal theory. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984). For purposes of a motion to dismiss, all allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994). However, the Court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Id.* at 754-55. Motions to dismiss generally are viewed with disfavor under this liberal standard and are granted rarely. *See Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).

## III. DISCUSSION

**1.    First and Second Claims: Violations of fundamental rights under the Fifth and Ninth Amendments**

Plaintiffs' first claim is for injunctive and declaratory relief for violation of fundamental rights under the Fifth and Ninth Amendments, identified as: (1) the "right to preserve life," (2) the "right to ameliorate pain," (3) the "right to maintain bodily integrity," (4) the "right to consult with [Plaintiffs'] physicians regarding treatment and to act on the physicians' recommendations," and (5) the "right to make certain intimate and personal decisions." FAC ¶ 99. Plaintiffs' second claim, also for injunctive and declaratory relief for violation of a fundamental right under the Fifth and Ninth Amendments, is for deprivation of the "fundamental right to control the circumstances of one's own death."

Plaintiffs argue that their first claim should not be dismissed because, in contrast to *Raich II*, which considered a narrowly defined affirmative right to use medical marijuana, Plaintiffs rely on the "well-established principle that Congress is limited in its authority to interfere with an individual's general right to protect his or her life and bodily integrity." Plaintiffs Supp. Brief 6. However, this argument ignores the specific direction given by the Ninth Circuit as to how to define the rights at issue in medical marijuana cases:

> Raich asserts that she has a fundamental right to "mak[e] life-shaping medical decisions that are necessary to preserve the integrity of her body, avoid intolerable physical pain, and preserve her life." We note that Raich's carefully crafted

7

> interest comprises several fundamental rights that have been recognized at least in part by the Supreme Court. *See Lawrence*, 539 U.S. at 574, 123 S.Ct. 2472 (recognizing that "the Constitution demands [respect] for the autonomy of the person in making [personal] choices"); *Casey*, 505 U.S. at 849, 112 S.Ct. 2791 (noting importance of protecting "bodily integrity"); *id*. at 852, 112 S.Ct. 2791 (observing that a woman's "suffering is too intimate and personal" for government to compel such suffering by requiring woman to carry a pregnancy to term).
>
> Yet, Raich's careful statement does not narrowly and accurately reflect the right that she seeks to vindicate. Conspicuously missing from Raich's asserted fundamental right is its centerpiece: that she seeks the right to use *marijuana* to preserve bodily integrity, avoid pain, and preserve her life. As in *Glucksberg*, *Flores*, and *Cruzan*, the right must be carefully stated and narrowly identified before the ensuing analysis can proceed. *Accordingly, we will add the centerpiece–the use of marijuana–to Raich's proposed right.*
>
> Accordingly, the question becomes whether the liberty interest specially protected by the Due Process Clause embraces a right to make a life-shaping decision on a physician's advice to use medical marijuana to preserve bodily integrity, avoid intolerable pain, and preserve life, when all other prescribed medications and remedies have failed.

*Raich II*, 2007 WL 754759 at *10 (emphasis added). Accordingly, the rights at issue in the first claim must be characterized in terms of the use of medical marijuana. For example, the asserted right to maintain bodily integrity is characterized properly as the right to use medical marijuana to maintain bodily integrity. So characterized, Plaintiffs' claim is foreclosed by *Raich II*.

Plaintiffs attempt to escape this result by framing their action as an as-applied challenge to a law prohibiting necessary treatment. Plaintiffs cite Supreme Court abortion decisions in support of their argument that when "a patient has no other option for protecting his or her life, he or she may bring an *as applied* challenge to a law prohibiting the necessary treatment." Plaintiffs' Brief 6. For example, in its decision in *Gonzales v. Carhart*, 127 S.Ct. 1610, 1639 (2007), the Supreme Court explained that "[a]s-applied challenges are the basic building blocks of constitutional adjudication," and stated that future as-applied challenges to the Partial-Birth Abortion Ban Act of 2003 should be entertained. *See also Wisconsin Right to Life, Inc. v. F.E.C.*, 546 U.S. 410 (2006) (permitting as-applied challenges to an election-reform statute previously found facially valid). However, even assuming that Plaintiffs may bring an as-applied challenge to the Controlled Substances Act, such a challenge does not automatically survive a motion to dismiss. Plaintiffs still must plead a fundamental right violated by the statute as applied to them. As discussed above, *Raich II* requires that, in the context of medical marijuana,

the asserted fundamental right include its centerpiece, the use of medical marijuana. *Raich II* holds expressly that the Constitution does not recognize a fundamental right to use medical marijuana to preserve bodily integrity or health.[5]  Thus, unlike in the abortion context where the question is whether a *recognized* right has been infringed by the application of a certain statute under specific circumstances, Plaintiffs have not met the threshold requirement that they identify a recognized right.

Plaintiffs argue that their second claim should not be dismissed because it alleges a fundamental right to control the circumstances of one's death that was not adjudicated upon in *Raich II*.  However, as with the asserted right to protect bodily integrity, the right asserted in the second claim must be characterized in light of *Raich II* as the right *to use medical marijuana* to control the circumstances of one's death.  Plaintiffs do not explain why such a right may be asserted here when the Ninth Circuit has declined to recognize a "right to make a life-shaping decision on a physician's advice to use medical marijuana to preserve bodily integrity, avoid intolerable pain, and preserve life, when all other prescribed medications and remedies have failed."  *Raich II*, 2007 WL 754759 at *10.

Plaintiffs have not identified any further facts that they could plead with respect to the first and second claims, the validity of which turns upon Plaintiffs' ability to identify a fundamental right.  Accordingly, the first and second claims will be dismissed without leave to amend.

**2.      Third Claim: Violation of the Tenth Amendment**

Plaintiffs' third claim seeks injunctive and declaratory relief for violation of the rights of the County and City of Santa Cruz under the Tenth Amendment, which provides: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved for the States respectively, or to the people."  U.S. Const. amend. X.  The Ninth Circuit explained in *Raich II*:

---

[5] Plaintiffs restate the issue in terms of the limits of the state's power to interfere with such a right.  This restatement does not alter the Court's analysis.

9

Case No. C 03-1802 JF
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND IN PART
(JFLC1)

> Generally speaking, . . . a power granted to Congress trumps a competing claim based on a state's police powers. "The Court long ago rejected the suggestion that Congress invades areas reserved to the States by the Tenth Amendment simply because it exercises its authority under the Commerce Clause in a manner that displaces the States' exercise of their police powers." *Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 291 (1981); *see also United States v. Jones*, 231 F.3d 508, 515 (9th Cir.2000) ("We have held that if Congress acts under one of its enumerated powers, there can be no violation of the Tenth Amendment."). The Supreme Court held in *Gonzales v. Raich* that Congress acted within the bounds of its Commerce Clause authority when it criminalized the purely intrastate manufacture, distribution, or possession of marijuana in the Controlled Substances Act. *See* 125 S.Ct. at 2215. Thus, after *Gonzales v. Raich*, it would seem that there can be no Tenth Amendment violation in this case. Raich concedes that recent Supreme Court decisions have largely foreclosed her Tenth Amendment claim, and she also concedes that this case does not implicate the "commandeering" line of cases.

*Raich II*, 2007 WL 754759 at *13. The Ninth Circuit further explained:

> The commandeering cases involve attempts by Congress to direct states to perform certain functions, command state officers to administer federal regulatory programs, or to compel states to adopt specific legislation. *See, e.g., Printz v. United States*, 521 U.S. 898, 935, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997); *New York v. United States*, 505 U.S. 144, 166, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992). The Controlled Substances Act, by contrast, "does not require the[state legislature] to enact any laws or regulations, and it does not require state officials to assist in the enforcement of federal statutes regulating private individuals." *Reno v. Condon*, 528 U.S. 141, 151, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000).

*Id.* at *13 n.17.

Plaintiffs argue that their third claim is supported by the commandeering cases. According to Plaintiffs, the FAC alleges "that the federal government has selectively targeted its enforcement efforts to 'undermine[] the state by incapacitating the mechanism the state has chosen for separating what is legal from what is illegal under state law.'" Plaintiffs Supp. Brief 5 (citing *Conant v. Walters*, 309 F.3d 629, 645 (9th Cir. 2002) (Kozinski, J., concurring). Plaintiffs assert that "[t]hese actions aimed at preventing the State from distinguishing medical and non-medical marijuana, cross 'the line distinguishing encouragement from coercion' and effectively force the state to re-criminalize medical marijuana" in violation of the Tenth Amendment. Plaintiff's Supp. Brief 5 (citing *New York v. United States*, 505 U.S. 144, 174-77 (1992).

In fact, the FAC alleges:

> The federal government has pursued a policy of threatening and utilizing arrests,

> forfeitures, criminal prosecutions and other punitive means, all with the purpose of rendering California's medical marijuana laws impossible to implement and with the intent of coercing California and its political subdivisions to enact legislation recriminalizing medical marijuana. This consistent and long-standing practice and policy of the federal government exceeds legitimate forms of persuasion and effectively commandeers the law-making function of California and its political subdivisions. As a part of that deliberate plan to force California to make medical marijuana illegal, the federal government selectively uses the enforcement and threat of enforcement of the Controlled Substances Act against the State and other entities as a mechanism to coerce the State into regulating through criminalization the behavior of private parties – namely seriously ill patients in need of medical marijuana – that the State wishes not to criminalize.

FAC ¶ 78. While this allegation indicates that Plaintiffs may be able to state a claim that falls within the scope of the commandeering line of cases, the FAC also contains allegations that suggest that the actual theory of the third claim is that the Defendants violated the Tenth Amendment by displacing California law. *See e.g.* FAC ¶¶ 86-87, 93. In light of the clear direction from the Ninth Circuit regarding impermissible Tenth Amendment claims and the Court's previous order dismissing the fifth claim with leave to amend in part, the Court concludes Plaintiffs also should amend their third claim and the relevant factual allegations.[6] Plaintiffs must do more than simply characterize the displacement of California law as commandeering; rather, they must explain factually how Defendants' actions "*require* [them] to enact laws or regulations" or "*require* state officials to assist in the enforcement of federal statutes regulating private individuals." *See Raich II*, 2007 WL 754759 at *13 n.17 (emphasis added).

3. **Fourth Claim: Immunity of Local Officials Under 21 U.S.C. § 885(d)**

Plaintiffs' fourth claim is for injunctive and declaratory relief on the ground that they are entitled to immunity under 21 U.S.C. § 885(d). This statute provides that:

> no civil or criminal liability shall be imposed by virtue of this subchapter upon any duly authorized Federal officer lawfully engaged in the enforcement of this subchapter, or upon any duly authorized officer of any State, territory, political subdivision thereof, the District of Columbia, or any possession of the United States, who shall be lawfully engaged in the enforcement of any law or municipal

---

[6] The Court has considered Defendants' argument that amendment of the third claim would be futile in light of the Ninth Circuit's discussion of the Controlled Substances Act. The Court concludes that such a conclusion would be premature at this time.

ordinance relating to controlled substances.

21 U.S.C. § 885(d). The City has enacted an ordinance that establishes an Office of Compassionate Use that, when presented with a valid identification card, "shall provide the patient, or the primary caregiver, with the amount of marijuana recommended by the physician for use over a one-month period." Santa Cruz Municipal Code § 6.92.040. Pursuant to Santa Cruz Municipal Code § 6.90.080, the Santa Cruz City Council deputized Corral and her husband and primary caregiver, Michael Corral, to serve as deputies in order to assist the City in administering its and California's medical marijuana laws. *See id.* ¶ 73.

Plaintiffs urge this Court to decline to follow *United States v. Cannabis Cultivator's Club, et al.*, No. C-98-00085 CRB, etc., slip op. at 2-5 (N.D. Cal. Sept. 3, 1998), in which Judge Breyer rejected the argument that section 885(d) provides immunity to medical marijuana providers. The Court previously has concluded that Judge Breyer's reasoning in that opinion was persuasive. *See Santa Cruz v. Ashcroft*, 279 F.Supp.2d 1192, (N.D.Cal. 2003), *reconsidered on other grounds*, Order Granting Motion for Reconsideration, *Santa Cruz v. Ashcroft*, Case No. C 03-01802 JF (N.D.Cal. April 21, 2004). In the interim, the Ninth Circuit has upheld a similar decision by Judge Breyer in *United States v. Rosenthal*, 266 F.Supp.2d 1068 (N.D.Cal. 2003). In that case, Judge Breyer wrote:

> Rosenthal's interpretation of Section 885(d) directly contradicts the purpose of the Controlled Substances Act. As the Supreme Court has held, the Act reflects a determination that marijuana has no medical benefits worthy of an exception (outside the confines of a Government-approved research project). To hold that Section 885(d) applies to the cultivation of marijuana for a medical cannabis club would conflict with the stated purpose of the Controlled Substances Act. [L]awfully engaged in enforcing a law related to controlled substances must mean engaged in enforcing, that is, compelling compliance with, a law related to controlled substances which is consistent . . . or at least not inconsistent . . . with the Controlled Substances Act. Section 885(d) cannot reasonably be read to cover acting pursuant to a law which itself is in conflict with the Act.

*Id.* at 1079 (internal citations and quotation marks omitted). The Ninth Circuit agreed with the district court that "cultivating marijuana for medical use does not constitute 'enforcement' within the meaning of § 885(d)," and that "Rosenthal's interpretation of the immunity provision contradicts the purpose of the CSA." *United States v. Rosenthal*, 454 F.3d 943, 948 (9th Cir. 2006). The Ninth Circuit's endorsement of the district court's decision in *Rosenthal*, and

particularly its broad conclusion that medical marijuana ordinances are inconsistent with the CSA, requires dismissal of Plaintiff's fourth claim.

**4.     Sixth Claim: Medical Necessity**

Plaintiffs sixth claim, not alleged in the original complaint, seeks injunctive and declaratory relief pursuant to the medical necessity doctrine. Plaintiffs allege that the defense of medical necessity is available to Plaintiffs because they will suffer harm without access to medical marijuana and they have no reasonable legal alternative.

In *Raich II*, the Ninth Circuit began its analysis of necessity by concluding that dicta in *United States v. Oakland Cannabis Buyers' Cooperative*, 532 U.S. 483 (2001) had not abolished "more than a century of common law necessity jurisprudence." *Raich II*, 2007 WL 754759 at *5 n.4. The Ninth Circuit then analyzed the four elements of a necessity defense[7] and concluded that the plaintiff appeared to satisfy the factual predicate for such a defense. However, the court observed that

> it is not clear whether the Supreme Court's decision in *United States v. Oakland Cannabis Buyers' Cooperative* forecloses a necessity defense to a prosecution of a seriously ill defendant under the Controlled Substances Act. Similarly, whether the Controlled Substances Act encompasses a legislative "determination of values," that would preclude a necessity defense is also an unanswered question.

*Id.* at *7 (citations omitted). The court described these as "difficult issues" and did not attempt to answer them. Instead, after engaging in the analysis discussed below, it concluded that these questions would be resolved better within the context of a specific prosecution under the Controlled Substances Act, where the issue would be fully joined. *Id.*

The Ninth Circuit noted that the necessity defense "is an affirmative defense that removes criminal liability for violation of a criminal statute" and that "singles out conduct that is otherwise criminal, which under the circumstances is socially acceptable." *Id.* (citations

---

[7] As a matter of law, a defendant must establish the existence of four elements to be entitled to a necessity defense: (1) that he was faced with a choice of evils and chose the lesser evil; (2) that he acted to prevent imminent harm; (3) that he reasonably anticipated a causal relation between his conduct and the harm to be avoided; and (4) that there were no other legal alternatives to violating the law. *United States v. Aguilar*, 883 F.2d 662, 693 (9th Cir.1989).

omitted).  However, the court continued: "[t]hough a necessity defense may be available in the context of a criminal prosecution, it does not follow that a court should prospectively enjoin enforcement of a statute." *Id.*  The court reasoned:

> Raich's violation of the Controlled Substances Act is a legally recognized harm, but the necessity defense shields Raich from liability for criminal prosecution during such time as she satisfies the defense. Thus, if Raich were to make a miraculous recovery that obviated her need for medical marijuana, her necessity-based justification defense would no longer exist. Similarly, if Dr. Lucido found an alternative treatment that did not violate the law–a legal alternative to violating the Controlled Substances Act–Raich could no longer assert a necessity defense. That is to say, a necessity defense is best considered in the context of a concrete case where a statute is allegedly violated, and a specific prosecution results from the violation. Indeed, oversight and enforcement of a necessity defense-based injunction would prove impracticable: the ongoing vitality of the injunction could hinge on factors including Raich's medical condition or advances in lawful medical technology. Nothing in the common law or our cases suggests that the existence of a necessity defense empowers this court to enjoin the enforcement of the Controlled Substances Act as to one defendant. Because common law necessity prevents criminal liability, but does not permit us to enjoin prosecution for what remains a legally recognized harm, we hold that Raich has not shown a likelihood of success on the merits on her medical necessity claim for an injunction.

*Id.* at 7-8.  While this analysis, without more, would appear to foreclose the possibility of a claim for injunctive relief based upon the necessity defense, the court also added the following in a footnote:

> We cannot ignore that the unusual circumstances of this case raise the danger of acute preconviction harms. The arrest of Raich or her suppliers, or the confiscation of her medical marijuana would cause Raich severe physical trauma. Under the right circumstances, Raich might obtain relief from the courts for preconviction harm based on common law necessity. *See generally Jones v. City of Los Angeles*, 444 F.3d 1118, 1129-31 (9th Cir. 2006) (noting that constitutionally cognizable harm can occur "at arrest, at citation, or even earlier," and criticizing the government's position that "would allow the state to criminalize a protected behavior or condition and cite, arrest, jail, and even prosecute individuals for violations, so long as no conviction resulted").

*Id.* at 8 n.9.  The court neither explained the nature of this possible relief nor elaborated on the circumstances in which it might be granted.

Plaintiffs assert two arguments as to why their claim for injunctive relief based on medical necessity is not foreclosed by *Raich II*.  First, they argue that they seek injunctive relief in the wake of actual arrests and seizures and in the context of a higher likelihood of prosecution, that the claim is made within the context of a concrete case, and that the problems of oversight

14

Case No. C 03-1802 JF
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND IN PART
(JFLC1)

and enforcement of an ongoing injunction that the *Raich II* court considered impracticable do not exist here. These distinctions are unpersuasive. Plaintiffs may face a higher risk of prosecution than the plaintiff in *Raich II*, but while arrests have been made, and while an arrest may constitute a stage of prosecution in the Sixth Amendment context, Plaintiffs do not allege that charges have been filed against them or that a prosecution is ongoing. If a prosecution were ongoing, the criminal proceeding would provide an adequate opportunity to raise a necessity defense. In the absence of a prosecution,[8] the impracticability concerns raised by the Ninth Circuit are as strong in the instant action as in *Raich II*. For example, there is no reason to believe that it would be easier to monitor Plaintiffs' medical conditions here than it would have been in *Raich II*. While Plaintiffs seek to enjoin only a prosecution stemming from the specific arrest at issue in this action, and thus the Court need look only at the viability of a necessity defense at the time of the events in question, Plaintiffs do not explain why their necessity argument could not be asserted effectively in a criminal prosecution, particularly given the Ninth Circuit's clear preference that the question be resolved in that manner. Were the Court to adopt the Plaintiffs' position, any individual in California arrested, but not charged, for possession of medical marijuana[9] likely would be able to file an action for injunctive relief from prosecution. Such a result is not in keeping with the Ninth Circuit's restriction of such actions to a limited set of circumstances or with Supreme Court jurisprudence with respect to enjoining criminal proceedings. *See Younger v. Harris*, 401 U.S. 37 (1971).

Second, Plaintiffs argue that the circumstances alleged in this action constitute the right circumstances for relief from preconviction harm referenced in footnote nine of *Raich II*. However, Plaintiffs have alleged only a single episode consisting of a raid and subsequent arrest.

---

[8] Contrary to Plaintiffs' apparent implication, this action is not equivalent to a prosecution.

[9] The Ninth Circuit states in a footnote that "[t]he causal connection prong [of the necessity defense] limits the danger that a medical necessity exception could open the floodgates to widespread exceptions to the Controlled Substances Act. A marijuana 'necessity' claimant absolutely must present, as Raich has, testimony that the allegedly unlawful action was taken as the direction of a doctor." *Id.* at 6 n.7.

They have not alleged a pattern of arrests followed by decisions not to prosecute; rather they speculate that if they do not obtain injunctive relief in this action,

> raids such as the 2002 raid of the WAMM facilities, which created the acute pre-conviction harms discussed above, could continue unchallenged so long as no subsequent prosecution occurred. These acute harms would proceed without allowing Patient-Plaintiffs an opportunity to bring their necessity claims before the court.

Plaintiffs' Brief 4. Allowing this claim to proceed would ignore the Ninth Circuit's mandate in *Raich II* that such issues be addressed if at all possible, in the context of a concrete dispute. If raids and harassment continue, but prosecution does not ensue, Plaintiffs may be able to allege sufficient pre-conviction harm to state a claim that fits within the limited circumstances contemplated by the Ninth Circuit, but they may not proceed merely because they fear that such harm might occur.

Accordingly, Plaintiffs' sixth claim will be dismissed. Leave to amend is inappropriate because Plaintiffs have not indicated that they are able to plead further facts that would bring this claim within the limited exception to the general bar on actions for injunctive relief based upon claims of medical necessity. However, the claim will be dismissed without prejudice to an appropriate motion for leave to amend should factual circumstances change such that Plaintiffs can allege that their treatment by Defendants falls within the exception described in *Raich II* and discussed above.

### IV. ORDER

Good cause therefor appearing, IT IS HEREBY ORDERED that the motion to dismiss is GRANTED with leave to amend as to claim three. Claim six is dismissed without prejudice. Claims one, two, and four are dismissed with prejudice. Any amended complaint should be filed within thirty days of the issuance of this order.[10]

DATED: August 30, 2007

JEREMY FOGEL
United States District Judge

---

[10] As the Court ordered on July 18, 2006, Plaintiffs should include an amended fifth claim in any amended complaint.

Case No. C 03-1802 JF
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND IN PART
(JFLC1)

Copies of this Order have been served upon the following persons:

| | |
|---|---|
| Daniel Nathan Abrahamson | dabrahamson@drugpolicy.org, drobelo@drugpolicy.org |
| John G. Barisone | cferris@abc-law.com |
| Graham A. Boyd | gboyd@aclu.org |
| M. Allen Hopper | ahopper@aclu.org |
| Frank Burke Kennamer | frank.kennamer@bingham.com |
| Neha Shah Nissen | neha.nissen@bingham.com, troy.sauro@bingham.com |
| Mark T. Quinlivan | mark.quinlivan@usdoj.gov |
| Benjamin Terrence Rice | benjamin.rice@doj.ca.gov, DocketingSACCLS@doj.ca.gov |
| Lauri A. Schumacher | lauri.schumacher@bingham.com |
| Rachel Hannah Sommovilla | invalidaddress@invalidaddress.com |

Notice has been delivered by other means to:

Judith Appel
Drug Policy Alliance
Office of Legal Affairs
717 Washington Street
Oakland, CA 94607

Troy Sauro
Bingham McCutchen LLP
Thee Embarcadero Center
San Francisco, Ca 94111-4067

Gerald Uelmen
Santa Clara University Law School
500 El Camino Real
Santa Clara, CA 95053

Adam B. Wolf
American Civil Liberties Union
Drug Law Reform Project
1101 Pacific Avenue, Suite 333
Santa Cruz, CA 95060

Case No. C 03-1802 JF
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND IN PART
(JFLC1)